IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

J.L. SOUSER & ASSOCIATES,          :
INC., t/a JLS AUTOMATION,          :          NO. 06-CV-2043
                                   :
          Plaintiff,               :
                                   :
          v.                       :          Judge Jones
                                   :
J&J SNACK FOOD                     :
CORPORATION,                       :
                                   :
          Defendant.               :

## MEMORANDUM AND ORDER

### April 24, 2007

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Motion to Transfer Venue Pursuant to 28

U.S.C. § 1404(a) ("the Motion"), filed by Defendant J&J Snack Foods Corp.[1]

("Defendant" or "J&J") on December 1, 2006. For the reasons that follow, the

Motion will be granted.

**FACTUAL BACKGROUND/PROCEDURAL HISTORY:**

On or about March 26, 2003, J.L. Souser & Associates, Inc. t/a JLS

---

[1] Defendant indicates that Plaintiff improperly plead Defendant as J&J Snack Food
Corporation. (Rec. Docs. 12-2 at 1; 20 at 1). Accordingly, herein, we will refer to Defendant as
indicated above.

1

Dockets.Justia.com

Automation ("Plaintiff" or "JLS"), a Pennsylvania corporation with its principal place of business in York, Pennsylvania, proposed to construct a Pretzel Handling Automation System ("the System") for J&J, a New Jersey corporation with its principal place of business in Pennsauken, New Jersey. (Rec. Doc. 11, ¶¶ 1-2; Exh. A). The proposed System was to be used at J&J's Pennsauken, New Jersey manufacturing facility ("Pennsauken facility"), and was intended to replace J&J's manual line. (Rec. Doc. 12-3, ¶ 2). J&J agreed to purchase the System, allegedly following JLS' representations that the System would meet certain performance parameters and would decrease J&J's labor costs. (Rec. Doc. 4 at 6, ¶¶ 7, 8, 11).

Allegedly following testing of the System at JLS' York County, Pennsylvania facility ("Pennsylvania facility"), on or about March 15, 2004 and March 16, 2004, JLS shipped the System's component parts to J&J. (Rec. Doc. 11, ¶¶ 9, 11). Accordingly, by April of 2004, JLS had installed the System at J&J's Pennsauken facility. (Rec. Doc. 11, ¶ 10; Exh. A at 7). As installed, the System was approximately 150 feet in length, causing it to occupy approximately fifty percent (50%) of the 5,600 square foot warehouse in which it was placed. (Rec. Doc. 12-3, ¶ 3).

J&J contends that from the moment the System was installed, it has been plagued with problems, and J&J has not realized any of the expected cost savings

2

and efficiencies.  (Rec. Doc. 12-2 at 3).  Specifically, J&J asserts that it first advised JLS of the System's problems in summer of 2004, and that JLS made numerous, unsuccessful attempts to the correct the problems, including the April of 2005 installation of different "gripper fingers" for the robots that were to pick up the frozen pretzels that J&J manufactures.  (Rec. Doc. 12-2 at 3).

Because of the System's ongoing problems, in September of 2005, the parties executed a System Testing Agreement ("the Agreement"), which established final acceptance criteria and a test by which the System's compliance therewith would be tested.[2]  (Rec. Docs. 11, ¶¶ 13-15; 12-2 at 3).  J&J contends that in accordance with the Agreement, it attempted to operate the System for nine (9) additional months and ran a number of acceptance tests, but that the acceptance criteria were never met.  (Rec. Doc. 12-2 at 3).

Accordingly, in October of 2006, J&J concluded the System was not viable, shut it down, and returned to manual labor for the packing of its frozen pretzels. (Rec. Doc. 12-2 at 3).  Also in October of 2006, JLS commenced this action in the Court of Common Pleas of York County, Pennsylvania, allegedly because it became aware that J&J intended to remove the System from its Pennsauken facility

---

[2] The parties appear to dispute who was to perform the final test under the Agreement.  (See Rec. Docs. 12-2 at 3; 17 at 2).

without permitting JLS to conduct the final testing thereof.  (Rec. Doc. 11, ¶¶ 23-27).  Thus, Plaintiffs' Amended Complaint seeks, <u>inter alia</u>, entry of an Order permitting JLS to test the System at J&J's Pennsauken facility[3] (doc. 11 at 7), and the System currently remains at the facility (doc. 12-2 at 3).

On October 18, 2006, Defendant removed the suit to this Court on the basis of diversity jurisdiction (doc. 1), and on December 1, 2006, Defendants filed the instant Motion (doc. 12), which has been fully briefed by the parties.  The Motion is, therefore, ripe for disposition.

## DISCUSSION:

In the Motion, Defendant moves to transfer venue to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1404(a).  In support of the Motion, Defendant argues: 1) this action could have been filed in the District of New Jersey; and 2) the "private and public interests weigh in favor of transfer."  (Rec. Doc. 12-1 at 6-7).  In response, Plaintiff argues: 1) venue is proper in the Middle District of Pennsylvania; and 2) "[b]oth [p]rivate and [p]ublic interests weigh in favor of maintaining this action in the Middle District of Pennsylvania."  (Rec. Doc. 17 at 7 (emphasis omitted)).  Thus, in Defendant's

---

[3] For the sake of completeness, we note that J&J has filed a counterclaim against JLS.  (<u>See</u> Rec. Doc. 4).

Reply Brief, it indicates that although venue is proper in <u>either</u> the District of New Jersey or the Middle District of Pennsylvania, this Court should transfer the instant action to the District of New Jersey because an "individualized, case-by-case consideration of convenience and fairness" requires it. (Rec. Doc. 20 at 3). <u>See Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988) (citing <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 622 (1964)).

As the parties have indicated, the statute governing the instant issue is 28 U.S.C. § 1404(a) ("§ 1404(a)"), which provides:

> (a)  For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).  Under § 1404(a), two showings must be established for the case to be transferred to another district or division, in this case the District of New Jersey.  A threshold question to consider is whether the action "might have been brought" in the proposed transferee district, the District of New Jersey.  <u>High River P'ship v. Mylan Labs., Inc.</u>, 353 F. Supp. 2d 487, 492 (M.D. Pa. 2005).  <u>See also Measurement Specialities, Inc. v. Stayhealthy.com</u>, 275 F. Supp. 2d 638, 640 (E.D. Pa. 2003).  "If this limitation is met, the court must then weigh a list of factors."  <u>High River P'ship</u>, 353 F. Supp. 2d at 492.  Stated another way, a showing must be made that the transfer will serve the convenience of the parties and the

witnesses, as well as the interests of justice.  Jumara v. State Farm Ins. Co., 55

F.3d 873, 879 (3d Cir. 1995).

     With regard to the first showing, whether the action "might have been

brought" in the proposed transferee district, the United States District Court for the

District of New Jersey, we consider 28 U.S.C. § 1391 ("§ 1391"), which provides,

in relevant part:

> A civil action wherein jurisdiction is founded only on diversity of citizenship
> may . . . be brought only in (1) a judicial district where any defendant resides,
> if all defendants reside in the Same State, (2) a judicial district in which a
> substantial part of the events or omissions giving rise to the claim occurred,
> or a substantial part of property that is the subject of the action is situated . .
> . .

28 U.S.C. § 1391(a).  As Defendant has argued, on this record, it is clear that this

action could have been filed in the District of New Jersey under either § 1391(a)(1)

or § 1391(a)(2) because the only Defendant to this action, J&J, is deemed to reside

in New Jersey, see 28 U.S.C. § 1391(c), and a substantial part of the events giving

rise to this action took place in New Jersey.  (Rec. Doc. 12-2 at 7).  Plaintiff does

not expressly acknowledge that venue would be proper in the District of New

Jersey.  However, it implicitly concedes as much in its opposing brief by indicating

that "[under Section 1391(a), two proper venues may lie in more than one federal

district" and proceeding to argue that venue is proper in the Middle District of

6

Pennsylvania, which suggests that Plaintiff recognizes the validity of Defendant's

preceding arguments as to the propriety of venue in the District of New Jersey.

(Rec. Doc. 17 at 4-6).

Because this action could have been commenced in the District of New

Jersey, we turn to the second showing to be made under § 1404(a), that the transfer

thereto will serve the convenience of the parties and the witnesses, as well as the

interests of justice.  28 U.S.C. § 1404(a).  When ruling on a motion for transfer,

courts are to consider not only the three factors outlined in § 1404(a)'s text, but

rather "all relevant factors to determine whether on balance litigation would more

conveniently proceed and the interests of justice be better served by transfer to a

different forum."  Jumara, 55 F.3d at 879.  Private interest factors to be considered

include: the plaintiff's forum preference, the defendant's forum preference, where

the claim arose, the convenience of the parties and the witnesses, and the location

of books and records.  Id.  Public interest factors to be considered include: "the

enforceability of the judgment; practical considerations that could make the trial

easy, expeditious, or inexpensive; the relative administrative difficulty in the two

fora resulting from court congestion; the local interest in deciding local

controversies at home; the public policies of the fora; and the familiarity of the trial

judge with the applicable state law in diversity cases."  Id. at 879-80 (citations

7

omitted).

Taking the private interest factors first, we are cognizant that "[t]he paramount private interest factor is the plaintiff's choice of forum[,] . . . [but that] the deference given to a plaintiff's choice of forum is reduced when the operative facts that give rise to the action occur in another district." Cameli v. WNEP-16 the News Station, 134 F. Supp. 2d 403, 405 (E.D. Pa. 2001) (citations omitted).

Reduced deference to Plaintiff's choice of forum, which became the Middle District of Pennsylvania upon Defendant's removal of the action to this Court, is in order here because the vast majority of the events that gave rise to the instant action took place in Defendant's choice of forum, the District of New Jersey.[4]  For example, the System was installed in New Jersey, it allegedly never worked properly in New Jersey, and it was serviced by Plaintiff, allegedly repeatedly, in New Jersey. Additionally, Plaintiff's own Amended Complaint demonstrates that Defendant's alleged intention to remove the System from its Pennsauken facility prompted Plaintiff to file the instant action (doc. 11, ¶¶ 23-27), and that the System, currently located in the Pennsauken facility, must be tested there (doc. 11, ¶ 22).  Because so

─────────────────────

[4] We are cognizant of Plaintiff's argument that several relevant events allegedly occurred in Pennsylvania: initial contract negotiations between JLS and J&J, construction of the System, and J&J's alleged failure to remit final payment to JLS.  However, we find the above contacts with New Jersey to be more both numerous and more directly linked to the initiation of the instant action.

many of the operative facts which led to the filing of the instant action occurred in New Jersey, this factor weighs strongly in favor of transferring venue to the District of New Jersey.

The other private interest factors, such as convenience of the parties and the witnesses, as well as the location of books and records, will necessarily render trial in either Pennsylvania or New Jersey inconvenient for whichever party is required to litigate outside of the state in which they are incorporated.  However, the lack of a JLS office in New Jersey and the presence of a J&J agent in Pennsylvania weigh slightly in favor of keeping this action in the Middle District of Pennsylvania. Nevertheless, Plaintiff's numerous trips to New Jersey, first to install the System, and, later to attempt corrections of its alleged problems, tend to show that the inconvenience associated with JLS' travel to New Jersey is not so great as to render it impractical.

Thus, because so many of the operative events which led to the filing of this action took place in New Jersey, and because at least one event required to resolve it, testing of the System, must occur in New Jersey, we conclude that overall, the private interest factors weigh in favor of transferring this action to the District of New Jersey.

Turning, then, to the public interest factors, we find that they too weigh in

favor of transferring the action to the District of New Jersey. Most notably, we find the practical considerations associated with trying this matter to be significant. Specifically, although Plaintiff argues that no jury will need to view the System at Defendant's Pennsauken facility, we find that any such determination would be premature at this early stage of litigation. Indeed, given the System's large size, and the relatively small portions thereof that can be shown in a single photograph (see doc. 12-3, Exh. A), we are particularly reluctant to conclude that a viewing would not aid a jury's understanding of the System and its operation. As such viewing of the System in New Jersey may be needed, and as the logistics associated therewith would be simplified were the case tried in the District of New Jersey, we find this public interest factor to weigh in favor of transferring this action. See Tounge v. Olin Corp., 1994 U.S. Dist. LEXIS 7924, at *9 (E.D. Pa. 1994) (granting a motion to transfer, in part, because "[i]f a jury needs to see the location of the unfortunate incident . . . travel from a court within the Middle District will be more convenient than travel from the Courthouse in Philadelphia.").

In summary, venue is proper in both the District of New Jersey and the Middle District of Pennsylvania, but the convenience of the parties and witnesses, as well as the interests of justice, are best served by litigating the dispute in the District of New Jersey. Accordingly, Defendant's Motion is granted.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.      Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. §

1404(a) (doc. 12) is **GRANTED**.

2.      The Clerk is directed to **TRANSFER** this action to the United States

District Court for the District of New Jersey.


                                        s/ John E. Jones III
                                        John E. Jones III
                                        United States District Judge